Honorable, the judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw an eye and give their opinion to the court of that city. God save the United States and this Honorable Court. Be seated. I want to welcome each and every one of you to the 4th Circuit Court of Appeals this morning, particularly the law students that are here and thank in advance the lawyers for being willing to argue cases here at the University of Richmond Law School. It's a great opportunity for them and it's an honor for the judges to participate in this as well. I'm Judge King. Geographically, I'm from West Virginia. Judge Diaz, who's on my right, is from North Carolina. Judge Henry Floyd on my left is a member of our court from South Carolina. We're pleased to be here. The first case is Lembach v. Bierman et al., Mr. Morrison. I'm sorry to have interrupted you previously, sir. Thank you, Your Honor. I look forward to hearing from you. May it please the court, I'm here on behalf of Lembach. We had filed a complaint in the district court alleging violations of the Fair Debt Collection Practices Act, the Maryland Consumer Debt Collection Act, and the Maryland Consumer Protection Act. The district court dismissed the case. The claims that we were asserting was really the means that were being used to collect debts against the Lembach. What the means that we complained about were that there were orders to docket, which is how a foreclosure is initiated, that the orders to docket were being presented to state courts, Maryland state courts, with signatures purporting to be the signatures of the people identified when they were not. In addition, what we complained about was that the notaries that were being affixed to affidavits that stated that someone appeared before them and signed this document were also inaccurate. And finally, the third category, which was probably what we considered the worst means of collecting these debts, was having other people fill in as the notaries and stating that someone appeared before that notary and signed a particular affidavit. Let me ask you this. What of the following facts do you dispute? Number one, the terms of the loan don't appear to be in dispute. Number two, your client signed the documents. You got the money, and you concede that you're in default. So the issue is materiality. Your Honor, that's correct. Do you agree with those facts?  Correct, Your Honor. But what the issue here is under the Fair Debt Collection Practices Act and the Maryland equivalent is the manner and method that you go about collecting debt. We're not here about whether they owed the debt. What these acts attempt to do is basically inhibit or limit how you go about collecting debts. I think Judge Floyd's point is that this materiality requirement implies some level of reliance on the part of your clients and how did your clients rely on these admittedly egregious facts that you present such that a claim has been made out under this particular federal statute? Your Honor, I'll address materiality in response. You claim there is no materiality requirement. Well, I don't believe there is, and here's why. There's a couple reasons why. First of all, there's nothing in the statute that says materiality and we pointed out a recent case by this court in a criminal setting where they refused to read in materiality into a statute that didn't mention it, recognize that Congress knows when to add the word materiality. But even you can see that there are some misrepresentations that couldn't possibly amount to a violation under this statute. So there's got to be some dividing line between those things that matter and those things that don't. Well, there's two parts, Your Honor. First of all, when we're talking about misrepresentations, the statute itself talks in terms of two parts. It's not just whether you misrepresent or it also talks in terms of deceiving in connection with collection, but it also talks about the means of collecting. And the district court here describes their actions as shortcuts. And if I can go further on materiality, when you talk... They're shortcuts because the lawyers didn't sign the papers. They had someone in the office sign for them. Right, and that's one part of it, and that's why I laid out the three parts. It's not just that they had someone else sign. They had notaries attesting that they had signed. And you can punish the notaries, right? I mean, they might be subject to criminal offenses. That's correct, Your Honor, but again, going back to materiality, I think you have to take into account the purpose behind, which is set forth in the statute. And the bar associations can do something with the lawyers if they're violating the rules of ethics, right? That is true, but those are not mutually exclusive. Just because the facts might support some sort of bar action doesn't mean that it's a cloak or a shield against those same facts being used. It seems to me that you either had to convince us that there's no materiality requirement under the statute, or if there is, that you've got something alleged here that is material, right? Right. But you have to do one or the other. That's what I'm here to do. That's what you're here to do, I understand. All right. But we've got a case that gives you a little problem. What's that called, Judge Motz wrote it? The Warren v. Sessions. Warren, yeah, the Warren case. How do you get around that? If I could mention it, that particular case actually didn't decide the issue. In that particular case, they found that the materiality issue was not before them because the particular violation was under 1692E11, which is a requirement that basically what's referred to as a mini Miranda warning be provided. What they did in that case, they did note that other courts have held. But I don't think if you read that case, the issue wasn't actually squarely before them. But the materiality, and I'll go through because you laid out exactly a lot of my notes. First, I don't think the materiality should be read into the statute. And the reason for that is twofold. One, the words don't appear when we look at the text of the statute. Second, this is a remedial statute. It seems it should be broadly and liberally applied. Adding a limitation to a remedial statute is inconsistent with the statutory construction. So then how do you deal with those misrepresentations which any reasonable observer would regard as trivial? The Seventh Circuit provided an example of that, of a debt collector representing to a debtor that he or she would receive a notice on tan paper. And in fact, the notice was received on blue paper. Under your reading of the statute, that's a misrepresentation. That's a violation of the Act. That subject's that debt collector to damages. Does that make any sense? It doesn't in the scenario you proposed, Your Honor. But what we're talking about here is substantially different. We're not talking about different colored paper. Well, then you're at least conceding that there are circumstances in which materiality does matter. Well, I think, Your Honor, what I'm pointing out is that the materiality might matter how you're proposing it. But what I'm saying is the question comes back to looking at the statute. What the statute prohibits is misrepresentations, deception, unfair or unconscionable debt collection, or means of debt collection. So I think in our case, we're not just talking about whether the representation itself, it's also is this appropriate means of collecting of debt? Using papers that are not what they purport to be, is that an appropriate means? We're not limited to the misrepresentations. And here's the other thing. I think if you do apply a materiality element here, that part of the issue that you're going to have to look at is was it applied correctly here? I would submit how Judge Titus applied it in this particular instance was he said, well, you owe the debt. Well, if that's the test for materiality, then this Collection Practices Act has no application if you owe the debt. And that's not how the statute's written. The statute's not concerned with whether you owe the debt. The statute's concerned with whether how you go about collecting that debt. And so if you're going to work backwards and just say, well, if you owe the debt, the ends justify the means, that doesn't make any sense. So I think in this particular case, even if you accept it, that you can't accept it how it was applied, that you just say, well, if you owe the debt, it's no longer material. Have the complaints been dismissed? The complaint was dismissed, right? Yes. Was it dismissed because of the forgery? Well, what happened was Mr. Lembach filed a motion to dismiss, and then they withdrew it. Was that because the lawyer's name had been forged on it? Yeah, that was the issue. The trustee's name. Correct. Was it the lawyer that contravened it by having someone sign his name and violated the lawyer rule, or was it the trustee who didn't sign it but was attested that he did? The lawyer who signed it played both roles. They were the trustee and the lawyer. And under the Maryland rules, the document has to be signed by the person presenting it, and it was not. So going back to the materiality, I mean, in this particular case, when you say, well, how is this material, I would suggest that it was material, I mean, for a couple reasons. One is the materiality. I mean, within a week of this coming out, our case being filed, the Maryland judiciary commenced the emergency rules session, and within a week's time, they passed new rules based on this, and in that rulemaking, they noted that this was an attack on the integrity of the judicial system and obvious prejudice to the homeowners. And so the Maryland courts take an action against lawyers doing this kind of thing. Yes. And you've won both cases. You've won one case or two cases? Both cases were dismissed. Pardon? Both of the cases. Both cases dismissed, so you've won both cases in the Maryland court system, but then the question is whether you can come over to the federal system and bring a claim under the federal statute. And the point here, Your Honor, is that the Fair Debt Collection Practices Act is designed, again, it's not whether the debt's owed. It's how you go about collecting the debt. How would your client be damaged by this? First of all, they had to pay attorney's fees to get both those cases dismissed, Your Honor. I mean, so those are damages directly related to what they did here. The American rule is that those things are borne by the parties, unless there's some fee-shifting provision. Well, and I think if you find that the means that they used... There's no fees. Is there a fee-shifting provision here? Well, not in the foreclosure action, Your Honor. But our contention is, and not at the circuit level, but in our district courts, we've cited cases where the court recognized that as a damage under the fair debt, that if you have to go, if someone uses an improper means to collect a debt... Can Maryland fix that, too, though? Maryland could adopt some provision to allow you to recover your attorney's fees if somebody files a false foreclosure proceeding against you. That's true, Your Honor, but that doesn't detract... The federal court doesn't have to get in the middle of that, does it? Well, in a way, it does, Your Honor, because of the Fair Debt Collection Practices Act, which says that if people use inappropriate means to collect debts, that you're allowed to obtain relief. In addition, Your Honor, as to the actual damages, there's also statutory damages under the Fair Debt Collection Practices Act that are available. And again, we're not talking about the debt. What we're talking about is how they went about to do it. And the question is, and for instance, one case that we cite, the only case that we sort of found on point in our district was District of Maryland's Green v. Baltimore City. In that particular case, Judge Smalkin found that when a party presented affidavits that were signed by him on behalf of the affiant, even though he could later come back and say these particular affiants meant the contents were true and correct, he dismissed the case with prejudice, recognizing that testimony is the bedrock of our system. And that's what we're talking about. The things that are being presented to the courts, in my mind, the issue is whether we agree with Judge Smalkin's conclusion that that's so basic to our system that we can't allow people, even if they can come in as they've done here... How long ago was that case decided? I don't have the year, Your Honor, but it was... He's not a judge up there anymore. No, he's not. He took senior status several years ago. I appreciate that broader policy argument. It obviously is important that the integrity of the courts be maintained, but what we're talking about here is a statute principally directed at debtors and creditors, not the broader judicial system. That's something that, if it's going to be handled, should be handled, it seems, separately from whether or not you have stated a viable claim under this statute. If I may answer, my time's out, but I'll use part of my rebuttal, because I want to answer... You answer Judge Leon's question. Yes, Your Honor. Actually, the statute itself doesn't limit itself. You're not talking about just the debt collector and the debtor. The statute itself actually talks in terms of the purpose of it is to make sure that someone who's using improper means doesn't obtain a competitive advantage against the people who follow the rules. And so when Judge Titus described this as a shortcut, and what we alleged in our complaint was that this was being done to give them a competitive advantage. So when you're looking at materiality, it's not simply just limited. The statute's not limited in its scope to only talking about the creditor and the debtor. The statute itself talks in broader terms. How does this affect other people who are competing? So you have to... So when he applied materiality here, there was no consideration of how this affected their competitors. If we're right, what we alleged in the complaint that a motion to dismiss, which should be taken as true, that this particular action gave them a competitive advantage, when you're considering materiality, under this statute, the purpose, under 1692 subsection E, which sets forth the purpose, you have to look at how it affects those other people. So I'm not making it broader than Congress made it. Thank you. Thank you, sir. You just saved some time. Mr. Schraub? Pleased to hear from you, sir. Good morning, Your Honor. It's a please of the Court. My name is Jonathan Schraub. I represent the FLEs in this matter. Your Honors, the issue in this case is not whether anybody agrees or disagrees with what the law firm defendant did in connection with the underlying foreclosure matters. The issue in the case is whether or not it constitutes a violation of the specific federal statute that's at issue here, the Fair Debt Collection Practices Act. And in order to determine whether it does or doesn't, the question turns on the issue of whether or not the alleged violation was material. Materiality is not a question of whether something is being read into this statute. Materiality is fundamental to the... It's inherent to, it is fundamental to the very purpose of the statute, as was found by every circuit that has considered the issue of materiality. The Sixth Circuit, the Seventh Circuit, the Ninth Circuit, the Eleventh Circuit, most recently the Second Circuit in the Gabrielle case, and I would maintain this circuit as well. So fundamental that Congress couldn't be bothered to actually insert the word into the statute? Congress did not insert the word into the statute. That's correct. That certainly would have helped out. They didn't know how to do it. It certainly would have helped out. Would have helped me out, considerably. But the fact of the matter is they didn't. But it doesn't take away from the fact that if you look at the underlying... Well, why should a court go around fixing the court? I'm sorry? Why should a court, like this court, go about fixing the statute? It's not a question we don't... It's not a question we don't believe of fixing the statute. It's a question of implementing, it's a question of implementing the inherent purpose that you can read into, or that you can read that the statute has. The statute has the basic purpose of protecting and advancing a debtor's right to make full and informed decisions based upon full information and not have deceptive practices that will impact on a debtor's decision as to how he or she will act in connection with a debt collection process. The appellants say that another general purpose of the statute is to avoid placing those debt collectors who comply with the statute at a competitive disadvantage. And isn't it reasonable to argue that allowing a law firm to engage in this sort of practice, that is robo-signing of documents, to more efficiently process an increasing number of foreclosure actions, places those who do not engage in this practice and who take the proper steps to complete the foreclosure process at a competitive disadvantage? It may place them at a competitive disadvantage, although, again, we can move, perhaps, Your Honor, into another discussion of how these signatures were actually done, because it's being somewhat misrepresented with respect to what actually happened here, but... Well, I mean, if we assume... We're not getting into the merits, but assuming what I just said is true and the allegations of the appellants are correct, wouldn't a reading that at least allowed the claim to go forward be consistent with that other purpose that the appellants pointed us to? It would be consistent, it would be consistent, but the fundamental purpose of the statute, the fundamental purpose of the statute, which also requires that there be some damage, you have to have... If the debtor is in no way impacted, every court that has ever considered the issue of the Fair Debt Collection Practices Act, as far as I'm aware, in any event, every circuit that has considered it, has determined that the fundamental purpose, the fundamental purpose of the act, as was laid out by Judge Estabrook in the Hahn decision and adopted by this court in the Sessoms decision most recently, was that debtors are supposed to have full information so that they can make their decisions. This was not an act that was promulgated to level the playing field predominantly or primarily among debt collectors. This was an act that was promulgated to protect debtors. It may have a subsidiary or corollary effect of assisting in leveling the playing field, if you will, among debt collectors, but the basic purpose of the act is to protect debtors. I don't think anybody can dispute that issue. Well, wouldn't a reading of the statute that maximizes punishment for debt collectors who engage in abusive practices also maximize the protection of debtors? It might, but it would also produce absurd results. It would produce the kind of absurd results which the Supreme Court has said we should not read the Debt Collection Act to do. In the German case, we should not read the Debt Collection Act to produce absurd results, right? You say not reading materiality in here would lead to an absurd result? Yes, it would. But the plain reading rule would work against you on that. I mean, you normally just read the words of the statute. It doesn't say materiality. It does not say materiality. It would be absurd if we didn't insert that in there. No, I don't think so, Your Honor, with respect, because I think you read the statute in a way so that you will implement the clear intent of the statutory language. Well, you get the intent from the statutory language, and the statutory language doesn't include the word material. It does not, but that does not mean that if you do not include materiality as a provision, the way every circuit has done that has considered it, you will wind up with a situation where the interpretation of the statute does violence to the very words that the statute is intending to do. Every statute that, as the Estabrook, as the Hahn decision has indicated, every federal tort statute, every federal statute has a materiality component built into it, and there is no reason that the FDCPA should be treated any differently, whether the word is in there or not. It is commonplace. But all these federal courts are some other federal court other than this one, right? No, because this court essentially said that. We essentially said that, but we didn't. That was sort of an observation. I mean, I think... Oh, I'm not suggesting... Go ahead, I'm sorry. I'm sorry, Your Honor. I'm not suggesting that it was the holding of the court in Sessoms, because indeed in Sessoms it was dealing with E11 where it was not necessary. But the court certainly went out of its way to cite all of the cases which do hold that for every single subdivision. It made the observation. It made the observation, and it is free to back away from that observation should it determine that that is what it desires to do. Well, to get a 1692E violation, you agree that the standard is the least sophisticated consumer? Absolutely. If that's the case, I mean, your default statement's made all the time in transactions. But if the default statement doesn't mislead a least sophisticated consumer, then it's not actionable. That's correct. So where were these people misled? They were not misled. To the extent that they relied on. I mean, that's the point. Materiality is just another way. It's another methodology of getting at the same point. The Sessoms case said that a statement cannot mislead if it is not material. I mean, these are sort of tautological statements, at least in my view. If a statement relates to a non-material fact, it makes no difference. The bottom line here is it makes no difference to a debtor who signs, who actually physically ascribes a signature. If every fact related to the debt is undisputed, the amount of the debt, the fact of the default, the date of the foreclosure, the amount of the foreclosure, how you go about redeeming the debt, every single substantive fact is correct, then how, in fact, the signature is ascribed to a document is absolutely immaterial in any common sense understanding. Paul, that's the case. Why does the Maryland court get so worked up over these lawyers falsifying the paper? Because, in fact, the Maryland court system may, in fact, have a different set of interests in this. The Maryland court system and the bar, for instance, have perhaps a different set of interests in this. There are a different set of interests at work here and a different set of regulatory system and a regulatory process at work with respect to how documents are presented in a court system. And those processes and those regulations and that degree of supervision is well underway in the state of Maryland. Whatever interests are at work here, and there may be many of them, are at work. The fact is it's not an FDCPA issue. You're not sponsoring the proposition that we should be endorsing this kind of conduct. Absolutely not. Absolutely not. That's why I said when I first stood up, this is not a question of anybody pinning a medal on anybody. The point here is that whatever the issue is, the one thing the issue is not is an FDCPA issue. It can be many things. It can be an issue for the bar. It can be an issue for the Maryland legislature. It can be an issue for an individual Maryland state court. It can be many things. The one thing that it cannot be is an FDCPA issue unless you're going to twist the FDCPA into something that is completely illogical. Of course, the issue that we are discussing has absolutely no bearing on a debtor. Let's talk about your cross-appeal. Why do you object to the use of the discovery rule? In other words, I think you tried to rely on the one year from the data violation language. Yes. Let's assume that their cause of action is a good one. How would they know that anything was wrong with the documents until they see it? They might not. They might not, and I grant you, Your Honor, it would be a harsh result. But equitable tolling, the cross-appeal, there are two sets of issues on the cross-appeal. There are the issues relating to the statute of limitations for the first set of alleged misrepresentations prior to the first foreclosure. That's where the discovery rule is an issue. And then there is the issue related to the alleged misrepresentations in the second foreclosure where they say that is within the one year period, and we say that's barred because that is simply a continuation of the original claim. And continuing representations related to an original claim do not start a new statute of limitations. So there are two separate issues relating to statute of limitations. Your question, Your Honor, goes to the first set of claims as to why a discovery rule shouldn't apply to those. And why it should not apply to those is because discovery rules or equitable tolling, which is essentially the same thing, does not generally apply in a situation where a statute of limitation is key to a specific date. It normally doesn't apply. It also is a very specific and unusual application of a rule. It has been made clear that unless there is a gross injustice that would result, and Harris versus Hutchison, this court said, it's only in the rare instances where it would be unconscionable to enforce the limitation periods and a gross injustice would result. I ask the court, what is the gross injustice that would result here in this case? And we have to question whether we apply the rule because it's never been determined that the rule applies to the FDCPA. So why would this be the case to decide that it applies where in this case we can't even find a material misrepresentation? But that goes to the merits, right? We're mingling the merits with this procedural question of whether or not the limitation period should apply. No, well, yes, except for the fact that in this case the question of a material misrepresentation can be decided at the motion to dismiss stage because that's an issue of law that is first decided by the court. So in this case we know, if I'm correct, if I turn out to be correct, we know that there was no material misrepresentation here because the issue was an issue that's completely immaterial. But if that's right, then that's the end of the matter and we don't need to worry about the statute of limitations. Well, that's true. That is true. You don't need to worry about the statute of limitations. So the statute of limitations, your cross-appeal is just a fallback position. The cross-appeal is mooted. There's no question. If we win on... If the court sustains the underlying court's decision, you don't have to reach the cross-appeal. There's no question about that. Well, there's not a lot of law out there on the discovery rule. I'm sorry, sir? There's not a lot of law out there on the discovery rule, so it's probably something we'd have to take a look at. Is the statute, the federal statute, a remedial statute, and therefore it should be liberally construed as opposed to strictly? Yes, it is a remedial statute, but you're applying, to apply a discovery rule, you're applying a rule that, again, if it's applied in the same context as the rule on equitable tolling, it's applied in cases where a gross injustice is going to apply or happen, and only in a rare instance where that is the case. And I would suggest that this is not a case where the court ought to consider that this is the application for such a rule. The facts do not merit it. Perhaps a factual situation could arise where that might be the case, but this is not the case where that ought to be considered. With respect to the second set of alleged misrepresentations, which related to the second foreclosure, which occurred clearly within a year of when they filed their suit, the argument is that those misrepresentations, alleged misrepresentations, on the second attempted foreclosure were just a continuation, were just a continuation of the same initial foreclosure action. Courts in this circuit have been split on the question of whether or not continuing efforts to foreclose on the same debt trigger a new statute of limitations or are just a continuation of the old, original statute of limitations. The North Carolina District Court in Martin v. Sessoms and Rogers said it was just a continuation of the old statute of limitations, and Fontel v. Hassett in Maryland is a case which that is a continuation of the old statute of limitations, and there are a number of other cases which reach the opposite result. The Akkawalde case out of Maryland has reached the opposite result and said it represents a new statute of limitations. So you have a split even in the district? Even in the districts here. I would suggest to the court the better reasoning, obviously from our point of view, is that it is a continuation of the old statute of limitations where you have a case like this one where nothing has changed. Nothing has changed. The new notices, the new action during the limitation period relates to the same debt. There is nothing new or different in the notice. There's nothing new or different about what's contained. It is simply a continuation of the exact same procedure that was started based upon a voluntary dismissal and a recommencement of the original action. In the cases which find that it is a new action, such as Bocconi, which was in the District of Maryland, Bocconi v. American Express, you have two credit reports that are separated by five years. And in the second credit report, five years later, there is new information. Arguably, the second credit report told the debtor that his disputed credit had been charged off, which the original credit report had never told him. So the court said, well, listen, you have some new information in your second report. That creates a new statute of limitations. That creates a new statute of limitations. That I can understand. In this case, you have got simply a continuation of the original action. There simply is no reason why that ought to trigger a brand new statute of limitations. And at least a half a dozen courts around the country have came, including some in this circuit, have come to that same conclusion. I would respectfully suggest that is the correct conclusion to come to under the facts of this case with respect to the statute of limitations as regards the second set of misrepresentations. I'm about out of time. If there are no other questions, I did reserve a minute for rebuttal  Thank you very much, sir. Mr. Morrison? Thank you, Your Honor. When you asked him about the competitive issue, he said, well, the primary purpose of the statute is the debtor, protecting the debtor. Well, let's assume he's right that that's the primary. There's no question. If you look at 15 U.S.C. 1692, Section E, it states the purposes  so someone won't be disadvantaged. So whether it's primary or secondary, it's still a purpose. It's still a purpose of the statute. It's still a valid concern. And what we're talking about here, they frame it in terms of just strictly misrepresentation so they can argue materiality. We're also arguing the means of collecting. Are you going to condone these means of collecting debts using documents where you have notaries making false statements where documents that are purported to be signed by someone are not signed by that person? Are you going to allow people to use other notaries or other people to stand in as notaries and make false statements? We're talking about the means of collecting the debt, not whether debt is owed. That's what we're here about. Judge Titus described it as shortcuts, maybe charitably, but at the end of the day, there is no question that they gained an advantage by creating a system. Now, Judge Diaz mentioned robo-signing practices. It's a little bit different than robo-signing, and we might have been guilty of using that term in our pleadings at some point, but this is different. Robo-signing is where you're having someone who really doesn't have knowledge sign off on documents, but their signatures are for real. They're actually signing those documents. They're different here. The person who's purporting to sign isn't signing. I mean, could you allow someone... Would the court be pleased or think it's an improper means of collecting a debt that if I call... Because an affidavit is nothing more than testimony. Would we call in the clerk who signed this document to testify in court, and you would accept their testimony? That wouldn't happen. The way they went about collecting these debts gave them a competitive advantage over their competitors who were doing it the right way, and it also gave them a means of collecting debt that I would describe as either unfair or unconscionable. And here's the thing. 1692E, the statute, talks in terms of preventing a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. So we're not limited to whether there's a misrepresentation here. What this court has to decide is whether they're going to condone the means that these people used to go about collecting on these debts, and it doesn't matter with all due respect whether they owed the debt or not. You say this is not robo-signing. What do you call it, then? I call it basically false signatures. False signatures. But is it a false signature if it's really authorized? Well, you know, I... What if you tell your paralegal to sign your name? Does that make it false? And here's why it's deceptive. Is that right? Is it false, then? No, it's not false. She's fully authorized, and she's acting under your orders. Right. Here's why. Every time you sign a pleading for someone else or you have someone sign, what do you do? You make a notation that's with permission or you put your initials. So everybody knows. That didn't happen here. People execute powers of attorney to give someone the right to sign their name, right? Right. And that can be done. That can be done, Your Honor. One, there are no power of attorneys here. And two, even when you sign, what do you sign? You reveal that your signing is the power of attorney for the person. That's part of the deception. And here they can say they didn't do that. They just signed... Somebody else signed the lawyer's name. Right. And what you're saying is that with respect to the debtor, when they see that signature with the underlying subscript, they think, whoo-hoo, I feel a lot better now that I know that this has been signed in this posture. How does that impact the merits of the debt? Okay. It doesn't impact the merits, but we're not here about the merits of the debt. We're here about how they went about to collect it. And when they say that it's immaterial, well, what happened in the two cases for Mr. Lembach? When he raised it, what happened? They dismissed the case. So from their own actions, they obviously thought it meant something. They dismissed two cases when it was raised. Why would they dismiss two cases when it was raised unless there's a problem? They're worried about the ethics board up there in Maryland, apparently, and then the notary's going to get in trouble for attesting that they had signed when they hadn't. That might be, but again, going back to that issue, Your Honor, just because, I mean, if I steal money from my client, it's an ethical violation, it doesn't mean I can't be prosecuted for stealing money as well. They're not mutually exclusive. I mean, this idea that they're cloaking themselves, saying, well, we committed ethical violations, so you can't sue us for Fair Debt Collection Practices Act, I just find unpersuasive, but you may find it persuasive, but I don't see how it's mutually exclusive, that somehow those facts can no longer be used. What we're talking about here, and keep in mind, when you say how did it hurt, when they filed, when they raised this issue, they dismissed. They had to hire an attorney to raise that issue. And, quite frankly, if they had signed and put the initials, maybe that attorney could have raised it, maybe in thousands of cases that they did this issue. But the ethics rules up there in Maryland don't permit the lawyer to tell somebody else to sign it, does it? The rules don't permit that. No. The lawyer has to sign under the rule, or if it's a pro se party, the pro se party has to sign. That doesn't seem to permit doing it by direction or a power of attorney. That's correct, Your Honor, and there's no power of attorney here, and there's no real contention. I mean, the cases that they cite that said this was appropriate, if you read the facts of those cases, you find out that those cases involved someone who had physical limitations, and they were allowed other people to sign it. But that's not the case here. And if they would have put the initials, maybe this would have been found out sooner. Maybe the competitive advantage that they enjoyed for years by doing this would have been discovered sooner if people saw it. Maybe we could have raised this issue and said, rule 1311 doesn't allow other people to sign this for you. You have to sign it. I'm not sure what interest the debtor would have in leveling the playing field among debt collectors. Their concern is with this debt. They're not, but you're interpreting the statute and this was the intent of Congress to make sure, and I think it ties into the means, the prohibition on wanting to regulate the means that people are trying to collect debts. I'm out of time. Thank you, Your Honor. Thank you very much, sir. Mr. Shroff, you've got one minute. You want to use it? I reserved it for the statute of limitations. I have much to say on other things. You argued about that statute of limitations already, hadn't you? On the statute of limitations issue, I just want to make sure that the court understands the position that we took, that there are two separate issues on the statute of limitations, and with respect to the first one, the question of whether or not there should be a tolling with respect to the first claims or so, there is no indication that there should be any tolling on the first claim because there is no indication that there is in this case, there should be no application because there's no indication that there was anything concealed that would lead to the application of an extraordinary remedy. With respect to the second issue, which is whether or not there was anything new that would create a new statute of limitations when the new foreclosure was started, there was not. It was exactly the same in all of the cases that have applied a new statute of limitations have had a new issue arise in the second set of communications, and that was not the case here, and so we believe it would not be an appropriate case to apply that rule in this case either. Thank you very much, sir. We'll come down and seek counsel.
judges: Robert B. King, Albert Diaz, Henry F. Floyd